State on relation of R. G. SNEED v. B. F. BULLOCK.

*County Commissioners—Sheriff—Election of.*

S was appointed sheriff in 1875, to fill a vacancy, and held the office until May, 1877; in the meantime—Nov., 1876—an election was held, and upon the result of certain legal proceedings in May, 1877, M was declared to be elected sheriff, who failed to give bond, and the county commissioners declared a vacancy and appointed B to fill the same; *Held*, that S had no right to hold over until the next *popular* election, but that B was entitled to the office, being elected by the *commissioners*.

(*Battle* v. *McIver*, 68 N. C., 467, cited and approved.)

CIVIL ACTION in the nature of a *quo warranto*, tried at Spring Term, 1878, of GRANVILLE Superior Court, before *Seymour, J.*

The case states : One James I. Moore was elected sheriff of Granville in August, 1874, for two years, and was inducted into office on the first Monday in September follow-

ing. In September, 1875, he failed to exhibit his tax receipts and renew his bond, and the commissioners declared the office vacant and appointed the plaintiff, Richard G. Sneed, to fill the same, who gave bond and was inducted into office. In September, 1876, Sneed renewed his bond and continued to act as sheriff until the 3d of May, 1877, when he ceased to act by reason of the circumstances hereinafter stated, to-wit: In November, 1876, the said Moore was elected sheriff and certain persons were elected commissioners. Upon the returns coming in, the county commissioners made an illegal canvass, refusing to count the votes of Henderson township, (*Moore* v. *Jones,* 76 N. C., 182, 8, 9) and proclaiming one Crews to have been elected sheriff, but upon the result of certain legal proceedings Moore was declared to be sheriff and on the 3d of May, 1877, the newly elected board of commissioners notified him to file his bond, which he failed to do. Thereupon a vacancy was declared and the defendant, Bullock, was appointed to fill the same, who qualified and gave bond, and continues to act as sheriff under said appointment. And on said 3d of May Sneed ceased to act and commenced this action.

It was contended for the plaintiff, that Sneed, being in office at the time Moore was declared elected, under the proceedings as aforesaid, but failed to give bond and qualify, had a right in law to continue to hold the office until his successor was elected and qualified, and his successor having failed to qualify, there was no such vacancy as the board could fill; while the defendant contended that upon such failure the board had the right to declare the office vacant, which had been done and Bullock appointed to fill the same. Thereupon His Honor adjudged that defendant, Bullock, was entitled to the said office of sheriff, and the plaintiff appealed.

*Messrs. Batchelor* and *Edwards,* for plaintiff.
*Messrs. Merrimon, Fuller & Ashe* and *Venable,* for defendant.

SMITH, C. J. The relator derives his title to the office of sheriff under an appointment made by the commissioners in September, 1875, to fill the residue of the term of J. I. Moore, which had become vacant by reason of his failure to exhibit the proper tax receipts required by Bat. Rev., ch. 106, § 5. The term which would have expired on the first Monday in September, 1876, was protracted, in the act changing the election from August to November, until the first Monday in December. Section 6 is in these words: " All officers whose terms of office would expire, did the election occur on the first Thursday in August, 1876, are hereby authorized and directed to hold over in the same until their *successors in office are elected and qualified under this act.*" Acts 1874–'75, ch. 237.

The commissioners in November canvassed the county vote, illegally rejecting that cast at Henderson, and declared James B. Crews to have received a majority of the votes, and to be elected sheriff. Under coercive orders of the judge of the superior court of Granville, in the month of May, a recount of the county vote was made inclusive of that cast at Henderson, by which it appeared that other commissioners had been elected, and that Moore, the former sheriff, had been re-elected to the office. He was thereupon notified to appear before the new board and qualify according to the requirements of law. He failed to do so, and the defendant was appointed by the commissioners in his place and admitted to the office, and Crews retired.

The case is not like that of *Jones* v. *Jones, ante,* 127, though many of the facts are common to both. There, the rejected vote did not change the result, and the treasurer elect was allowed ample time to prepare and tender his bond. The objection was directed not against the validity of the act of

appointment itself, but against the legal capacity of the board then holding over to make the appointment. It is decided that the commissioners being officers *de facto*, were competent to perform all official acts, so far as they affected third persons, as if they were officers *de jure*, and that their right to hold office could not in that proceeding be called in question. Here, the act is unlawful, whether done by the retiring or incoming board, and the contingency calling into exercise the power to supply a vacancy does not arise until after a full and legal count, and the failure of the sheriff elect then to qualify.

The relator's claim however must be, and by his counsel is, put upon other grounds and cannot prevail unless good against both Crews and the defendant. It is his title to the office that is now in controversy, and not that of the two appointees as between themselves. The relator contends that the force and affect of the act of 1874, § 6, is to prolong the term and continue him in office until the next popular election, and for this relies upon *Battle* v. *McIver*, 68 N. C., 467.

In that case, upon the resignation of S. S. Ashley, superintendendent of public instruction, the governor appointed the relator to fill the residue of his term, expiring on the first day of January, 1873, as he was authorized to do by the constitution. Art. III., § 13. At the election held in August, 1872, after the appointment, James Reed was elected to the office for the ensuing term and died before its commencement. In January, 1873, the relator was appointed to fill the term. The court decided that, as the defendant substituted in place of his predecessor and invested with all his rights, was to hold the office until "his successor be elected and qualified," there was no vacancy to be filled and the appointment of the relator was void.

The decision does not, however, dispose of the present case. The purpose and scope of section 6, most obviously,

is to extend the term only, and make its terminal point coincident with the beginning of the deferred succeeding term. It does not undertake to annul the existing law which authorizes and directs the commissioners upon the ascertained inability of a sheriff elect to give bond, or his failure while in office when required to renew it, to exhibit proper evidence of his having accounted for the public taxes, to appoint or elect another in his place. Upon no fair and reasonable rules of construction can the act be allowed to have such effect. The word used, though usually applied to the result of a popular vote, is not inappropriate to express the action of the commissioners as well. The five commissioners who form a county board vote and elect when they exercise the power to designate the person to fill a vacant office. An election is defined by Webster to be, "the act of choosing a person to fill an office or employment by any manifestation of preference, as by ballot, uplifted hand or *viva voce.*" Plainly in this sense the word is used in the act and cannot [by verbal criticism be so restricted as to produce the results contended for by the counsel of the relator.

No error.                                                    Affirmed.